UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHARI LYN MORAN, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 3:19-CV-296-TLS-JPK |
| ) | |
| ANDREW M. SAUL, Commissioner ) | |
| of Social Security Administration, ) | |
|     Defendant. ) | |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed on April 11, 2019, and Plaintiff's Opening Brief [DE 20], filed on October 29, 2019, in support of her request for review and remand of the Commissioner of Social Security's decision denying Plaintiff's claim for disability insurance benefits. Defendant filed a Memorandum in Support of Commissioner's Decision [DE 23]. Plaintiff filed no reply, and the time to do so has passed.

On August 12, 2019, District Court Judge Teresa L. Springmann entered an Order [DE 14] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant briefing pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

**PROCEDURAL BACKGROUND**

On December 31, 2015, Plaintiff filed an application for disability insurance benefits, alleging disability beginning December 18, 2015, due to carpal tunnel syndrome, migraine

headaches, high blood pressure, cholesterol, heart disease, and anxiety. (AR 26, 105-06).[1] The application was denied initially and on reconsideration. (AR 105-30). Plaintiff then requested a hearing (AR 137-38), which was held before an Administrative Law Judge (ALJ) on January 25, 2018. (AR 46). On March 7, 2018, the ALJ issued an unfavorable decision, making the following findings:[2]

> 1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2017.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 18, 2015 through her date last insured of March 31, 2017.
>
> 3. Through the date last insured, the claimant had the following severe impairments: chronic obstructive pulmonary disease, carpal tunnel syndrome of the hands bilaterally, cubital tunnel syndrome of the elbows bilaterally, obesity, anxiety, and depression.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. [T]hrough the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b), i.e., to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours of an 8-hour workday, and sit 6 hours of an 8-hour workday. However, she could only occasionally climb ramps and stairs, and could have never climbed ladders, ropes, or scaffolds. She could have occasionally, balanced, stooped, knelt crouched and crawled. The claimant should have avoided concentrated exposure to extreme heat, extreme cold, noise at the DOT level 4 (loud), vibration, fumes, dusts, odors, gases, poor ventilation, dangerous moving machinery, and unprotected heights. The claimant could frequently reach in all directions, including overhead, bilaterally, and she could frequently handle and finger bilaterally. The claimant could have occasional contact with co-workers, supervisors, and the general public.

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

      6.      Through the date last insured, the claimant was unable to perform any past relevant work.

      7.      The claimant was born [in]1962 and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured.

      8.      The claimant has at least a high school education and is able to communicate in English.

      9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

      10.      Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

      11.      The claimant was not under a disability, as defined in the Social Security Act, at any time from December 18, 2015, the alleged onset date, through March 31, 2017, the date last insured.

(AR 28-41).

The Appeals Council denied Plaintiff's request for review on February 5, 2019 (AR 2-7), rendering the ALJ's March 2018 decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by

substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable

4

impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts three grounds for reversal of the ALJ's March 2018 decision. She contends the ALJ: (1) improperly weighed the opinion of psychological consultative examiner Dr. Nancy Link regarding Plaintiff's mental limitations, (2) failed to include related limitations in Plaintiff's RFC and corresponding hypothetical questions to the Vocational Expert, and (3) improperly "over emphasized" Plaintiff's daily activities. (Pl.'s Br. 9, 22, ECF No. 20). As explained below, while the Court finds no error in the ALJ's consideration of Plaintiff's daily activities, the Court agrees with Plaintiff that the ALJ erred in assessing the psychological consultative examiner's opinion, and that the ALJ's mental RFC determination and any related hypotheticals posed to the Vocational Expert also require reconsideration on remand.

## I. The Psychological Consultative Examiner's Opinion

Plaintiff's first ground for appeal challenges the ALJ's assessment of the April 2016 opinion of consultative examiner Dr. Nancy Link. In a report following her examination of Plaintiff on April 13, 2016, Dr. Link stated that Plaintiff "is considered to be moderately-to-severely impaired in terms of work related activities in respect to her overall signs and symptoms of anxiety and double depression." (AR 400). According to Plaintiff, this opinion in the context of Dr. Link's full report supports "a multitude of mental limitations in the residual functional capacity (RFC) equivalent to a moderate gradation or more severe" that were omitted from Plaintiff's RFC. (Pl.'s Br. 20, ECF No. 19-20). But the ALJ accorded only "some weight" to Dr. Link's report, and discounted this particular statement (or at least a variant of it) as a "vague indication" of how Plaintiff's symptom's "might be characterized" and "in terms of work related activities" that is "not consistent with the detailed evidence of record, or with what the claimant can and has done." (AR 38). There are two problems with this analysis. First, Dr. Link's April 2016 report contained additional (and different) opinions which the ALJ failed to assess, leaving this Court unable to determine which portions of the report the ALJ accorded "some weight" and which portions were discounted or rejected altogether. And second, the ALJ failed to explain what evidence or activities by Plaintiff were inconsistent with any of Dr. Link's opinions that the ALJ discounted or rejected.

In addition to the foregoing opinion regarding Plaintiff's work related-activities, Dr. Link's examination report also stated that Plaintiff "reported symptoms that might be characterized as creating moderate-to-severe difficulty in customary activities and daily living skills." (AR 400). The report listed specific symptoms of "depressed mood, anxious, distress, over eating, insomnia, low energy, low self-esteem, poor concentration, and feelings of helplessness, hopelessness, worthlessness, and inappropriate guilt." (AR 397). Dr. Link also found "evidence of psychomotor

retardation," and that Plaintiff "tends to catastrophise and her negative cognitions with themes of worthlessness and guilt predominate her thought life and serve to maintain her dysthymic mood." (AR 397). Then, after conducting a functional assessment and mental status examination, Dr. Link diagnosed Plaintiff with persistent depressive disorder (dysthymia), and major depressive disorder, recurrent, moderate, with anxious distress. (AR 400). But while the ALJ acknowledged many of these findings (all but the evidence of psychomotor retardation, tendency to catastrophise, and negative cognition), the decision failed to mention any of them when assessing the opinion regarding Plaintiff's "work-related activities" that followed. (AR 36-38). Equally problematic, the ALJ recounted a slightly altered version of the one statement she did assess. Whereas the decision cast Dr. Link's opinion regarding Plaintiff's work-related activities as an assessment of how they "might be considered" (AR 36-37) or "might be characterized" (AR 38), Dr. Link's examination report actually stated as follows: "Based on the findings from this evaluation and the records supplied with this referral, Ms. Moran *is considered* moderately-to-severely impaired in terms of work related activities in respect to her overall signs and symptoms of anxiety and depression." (AR 400 (emphasis added)). Yet the ALJ failed to acknowledge this more definitive conclusion or the findings set out in the preceding evaluation on which it was expressly based.

As Plaintiff argues, an ALJ "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record," and "rejecting or discounting the opinion of the agency's own examining physician" is an "unusual step" that "can be expected to cause a reviewing court to take notice and await a good explanation." (Pl.'s Br. 13-14 (quoting *Beardsley*, 758 F.3d at 839; *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)). Here, however, the ALJ discounted the entirety of Dr. Link's examination report as a "vague indication" of how Plaintiff's symptoms "might be characterized," without considering Dr. Link's more conclusive statement

7

that Plaintiff "is considered moderately-to-severely impaired in terms of work related activities," and without addressing the specific symptoms and other findings that Dr. Link reported, such as "poor concentration" and "psychomotor retardation." (AR 38, 397, 400). And while the ALJ found any such moderate or severe impairment "not consistent with the detailed evidence of record, or with what the claimant can and has done" (AR 38), the decision failed to identify the evidence or actions by Plaintiff that were inconsistent with Dr. Link's opinion regarding Plaintiff's work-related activities, or even indicate the type of evidence contemplated (*e.g.*, treatment records, function reports, agency opinions, or testimony, at least some of which supported the opinion). Such a generic and unsubstantiated criticism falls far short of the "good explanation" for rejecting an agency examiner's opinion required by Seventh Circuit precedent.

The Commissioner attempts to supply such good explanation by highlighting evidence discussed elsewhere in the ALJ's decision, including treatment records from Plaintiff's physicians and function reports by Plaintiff herself. (D's Mem. 7-8, ECF No. 23). According to the Commissioner, the ALJ "reasonably found Dr. Link's opinion was not consistent with this evidence showing stable symptoms and normal mental status examinations." (*Id.*). As an initial matter, this Court "is confined to the rationales offered by the ALJ," not those later suggested by the Commissioner. *Shauger v. Astrue*, 675 F.3d 690, 695-96 (7th Cir. 2012).[3] But as importantly, even if the ALJ had the records cited by the Commissioner in mind when discounting Dr. Link's opinion regarding Plaintiff's work related activities, they too contain additional information that the Commissioner and ALJ have failed to address. For instance, while the ALJ cited treatment records showing "stable" depression, "no change" in anxiety, and an "appropriate" mood and

---

[3] *See also Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) ("the ALJ's decision cannot be defended on a basis not articulated in her order"); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("the ALJ did not rely on this rationale in his opinion, so the Commissioner cannot now rely on it").

8

affect (AR 37, 517-18, 617, 635), the same records continued to indicate that Plaintiff's anxiety and depression were ongoing problems requiring medication. (AR 522, 526-27, 621-23, 632, 646-48). Similarly, although the ALJ noted a function report stating that Plaintiff had never been fired or laid off due to problems getting along with others (AR 31, 262), an earlier function report indicated otherwise. (AR 241).

The Commissioner's reliance on other portions of Dr. Link's report discussed by the ALJ is unavailing as well. According to the Commissioner, contrary to her opinion of moderately-to-severely impaired work-related abilities, "Dr. Link's examination was unremarkable, showing normal judgment, minimally impaired memory and recall, and the ability to do simple calculations." (D's Mem. 6-7, ECF No. 23 (citing AR 36-38, 399-400)). But while the ALJ discussed portions of Dr. Link's report stating that Plaintiff answered some questions correctly and performed some simple math calculations (AR 36, 398-99), the decision overlooked additional findings that Plaintiff failed to report the correct time (stating 12:45 when the actual time was 1:32) and how many weeks are in a year, and had difficulty counting backwards by sevens. (AR 398-99). As noted above, moreover, the ALJ and Commissioner further neglect to mention Dr. Link's additional findings of psychomotor retardation, Plaintiff's tendency "to catastrophise," and the "negative cognitions" that "predominate her thought." (AR 397). Given these findings and Dr. Link's ultimate conclusion that Plaintiff is "moderately-to-severely impaired in terms of work related activities," this Court is unable to conclude that Dr. Link's report otherwise evidences the "normal judgment" that the Commissioner sees.

To be clear, however, none of this is to say that Dr. Link's report or any other evidence compels the conclusion that Plaintiff's work-related abilities are "severely-to-moderately impaired," as Dr. Link opined. (AR 400). "As a general rule, an ALJ is not required to credit the

9

agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley*, 758 F.3d at 839. And perhaps after considering all of the foregoing evidence the ALJ may still find Dr. Link's opinion regarding Plaintiff's work-related abilities unsupported or outweighed by other compelling evidence, or that it requires no change in Plaintiff's RFC. But again, an ALJ "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record," and "rejecting or discounting the agency's own examining physician" calls for a "good explanation" of that evidence. *Id.* (quoting *Gudgel*, 345 F.3d at 470). While there may be compelling evidence warranting rejection of some or all of Dr. Link's opinions, the ALJ failed to identify it, or the opinions in Dr. Link's report that were inconsistent with it. This Court therefore recommends remand of this case for reconsideration of Dr. Link's full report and the opinions therein in light of the evidence discussed above, along with any additional evidence or opinions offered or solicited on remand.[4]

## II.    The ALJ's Mental RFC Determination

Plaintiff next challenges the ALJ's mental RFC determination and related hypotheticals posed to the Vocational Expert ("VE") in three respects. She argues the ALJ erred by failing to include any limitations in the RFC or hypotheticals to address her difficulties with concentration, persistence, or pace, and stress, and by including only a "temporal limitation in relation to contact with other persons," thus omitting any "qualitative interaction limitations." (Pl.'s Br. 20-21, ECF No. 2). While the Court makes no finding regarding what (if any) additional mental limitations are

---

[4] Should the ALJ continue to find Dr. Link's opinion "vague" in one or more respects (AR 38), she would retain the option on remand to recontact the medical source for clarification. *See Kenneth P. v. Saul*, 18-cv-3346, 2019 WL 4958245, at *8 (N.D. Ill. Oct. 8, 2019). "However, the ALJ need not re-contact a medical source when the record contains adequate information for the ALJ to render a decision." *Id.* (brackets omitted, quoting *Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018)); *accord Chestine G. v. Saul*, No. 18-cv-4980, 2020 WL 1157384, at *13 (N.D. Ill. Mar. 10, 2020) ("An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." (quoting *Skarbeck v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)). This Court therefore expresses no view regarding whether clarification should be sought from Dr. Link; it would remain for the ALJ to determine on any remand whether the record otherwise contains adequate information to render a decision.

10

required in Plaintiff's RFC, it agrees that the ALJ erred by failing to explain how the RFC determination addressed Plaintiff's various mental limitations, particularly those regarding concentration, persistence, or pace.

"In this circuit, 'both the hypothetical to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,'" including any "mental limitations." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). Here, when analyzing the "Paragraph B" criteria of the relevant psychological listings (12.04 and 12.06), the ALJ determined that Plaintiff has mild limitations in concentrating, persisting, or maintaining pace and understanding, remembering, or applying information, and moderate limitations in interacting with others. (AR 31-32). Then, when determining Plaintiff's RFC, the ALJ acknowledged Dr. Link's notation of poor concentration, and relied heavily on both agency reviewers' findings of mild limitations in concentration, persistence, or pace. (AR 36, 39). Without further discussion, however, the ALJ included only one related limitation in Plaintiff's RFC – restricting her to "occasional contact with co-workers, supervisors, and the general public." (AR 32). Given the requirement to address all medically supported limitations when determining a claimant's RFC, the ALJ's failure to accommodate Plaintiff's additional mental limitations (in concentrating, persisting, or maintaining pace and understanding, remembering, or applying information), or explain why no further RFC restrictions were needed to do so, was reversible error. *See Heath v. Saul*, No. 1:19-cv-335, 2020 WL 3287221, at *2 (N.D. Ind. June 18, 2020) (citing *Yurt*, 758 F.3d at 860); *Jennifer B. v. Saul*, No. 1:19-cv-347, 2020 WL 2520996, at *4 (N.D. Ind. May 18, 2020) (same).

The Commissioner counters with evidence that Plaintiff "could pay attention, follow instructions, and handle stress," and argues that the ALJ "considered this evidence, along with

11

Plaintiff's report that she could not tolerate large groups of people . . . and reasonably determined that Plaintiff should be limited to work involving only occasional contact with co-workers, supervisors, and the general public." (D's Mem. 10, ECF No. 23). But the ALJ's decision also pointed to evidence of additional mental limitations, including Dr. Link's finding of poor concentration (AR 36, 397) and two other agency opinions finding mild limitations in concentration, persistence, or pace. (AR 39, 109, 119). And after examining the full record, the ALJ correspondingly found mild limitations in this area and in understanding, remembering, and applying information. (AR 31-32). Having credited that evidence and made those findings, the ALJ was obliged to accommodate those additional mental limitations in Plaintiff's RFC, or explain why it was unnecessary to do so. That the limitations were mild does not excuse this failure. *See Heath*, 2020 WL 3287221, at *2; *Jennifer B.*, 2020 WL 2520996, at *4-6 (collecting decisions remanding where ALJ failed to consider mild mental limitations when determining RFC). Once the ALJ found additional mental limitations, even if they were mild and ultimately required no additional restrictions in Plaintiff's RFC, it was necessary to explain why they had no impact on Plaintiff's ability to work. *Heath*, 2020 WL 3287221, at *2; *Jennifer B.*, 2020 WL 2520996, at *5.

Having failed to explain how the RFC determined for Plaintiff accommodated her additional limitations in concentration, persistence, or pace and understanding, remembering, or applying information, the ALJ failed to build the requisite logical bridge from the evidence of these limitations to the ALJ's conclusion. *See Heath*, 2020 WL 3287221, at *2 (ALJ failed to build logical bridge to his RFC determination where "he didn't discuss how those limitations impact [claimant's] ability to work or how they interact with her other limitations"); *see also Yurt*, 758 F.3d at 859 (remanding for reconsideration of RFC in relation to limitations in concentration, persistence, or pace and understanding and remembering instructions: "This failure to build an

12

'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental RFC requires us to remand for further proceedings."). The Court therefore recommends that the case be remanded for further consideration of whether these additional mental limitations should be accommodated in Plaintiff's RFC, after considering the foregoing evidence, including a reassessment of Dr. Link's opinion. Additionally, to the extent the ALJ determines that any mental limitations are manifested or aggravated by stress or anxiety, it would be necessary to consider whether Plaintiff's RFC should also limit her to the types of jobs that avoid such risk, and to apprise the VE of any new limitations included in the RFC. *See Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (remanding where "there was no restriction related to stress in the RFC or hypothetical question": "where a claimant's limitations are stress-related, as Winsted's appear to be, the hypothetical question should account for the level of stress a claimant can handle").[5] But again, this is not to say that Plaintiff's RFC requires any additional mental restrictions, only that it is necessary to explain whether Plaintiff's mental limitations have an impact on her ability to work, and how the RFC determined by the ALJ addresses those limitations.

During any such remand, the ALJ may also consider whether an additional "qualitative interaction limitation" is also required, although this Court finds Plaintiff's argument for such a limitation less persuasive, and therefore finds no error in the ALJ's decision on this basis. Citing *Hurley v. Berryhill*, No. 1:17-cv-421, 2018 WL 4214523, at *3 (N.D. Ind. Sept. 5, 2018), Plaintiff faults the ALJ's RFC determination for including only a "temporal limitation in relation to contact with other persons," but no "qualitative interaction limitations." (Pl.'s Br. 20-21, ECF No. 20). As

---

[5] *See also id.* (citing decisions that satisfied this requirement, including *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007), and *Johansen v. Barnhart*, 314 F.3d 283, 285, 288-89 (7th Cir. 2002)); *Yurt*, 758 F.3d at 858-59 (RFC and hypothetical failed to limit claimant to low-stress work or otherwise exclude positions likely to trigger her mental limitations: "we allowed the hypothetical in *Johansen* to stand despite its omissions because its description of 'repetitive, low-stress work' specifically excluded positions likely to trigger the panic disorder that formed the basis of the claimant's limitations in concentration, persistence, and pace"); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (same, collecting decisions).

other courts have recognized, however, *Hurley* involved two psychologists' opinions recommending the claimant be limited to superficial contact with supervisors and coworkers, which the ALJ gave great weight, but then failed to incorporate that limitation in the claimant's RFC or explain why he excluded it. *See Smith v. Saul*, No. 1-19-cv-371, 2020 WL 3264111, at *3 (N.D. Ind. June 17, 2020) (distinguishing *Hurley*: "In that case, though, the ALJ gave great weight to two psychologists who specifically opined that the claimant could only superficially relate to coworkers and supervisors."); *Howard v. Saul*, No. 1:19-cv-75, 2020 WL 806647, at *6 (N.D. Ind. Jan. 29, 2020) (same), *adopted by*, 2020 WL 813080 (N.D. Ind. Feb. 18, 2020).[6] Plaintiff points to no opinion in this case, by Dr. Link or anyone else, recommending a limitation to superficial contact with others in the workplace.

Instead, Plaintiff states in a footnote that Dr. Link's opinion "identifies both temporal and qualitative interaction problems." (Pl.'s Br. 20 n.40, ECF No. 20 (citing AR 398)). But the cited portion of Dr. Link's report discusses Plaintiff's own descriptions of her difficulties in social settings, not Dr. Link's opinion that Plaintiff should be limited to superficial contact with others at work.[7] Absent such an opinion, this Court is unable to say that the ALJ's RFC limitation to occasional contact with supervisors, coworkers, and the general public (AR 32) was insufficient to address Plaintiff's social issues. *See Hudson v. Saul*, No. 1:19-cv-133, 2020 WL 1466427, at *4 (N.D. Ind. Mar. 26, 2020) (rejecting claimant's argument for a qualitative interaction limitation

---

[6] The other decisions Plaintiff cites are inapposite for the same reason. *See Wartak v. Colvin*, No. 2:14-cv-401, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016) (remanding where ALJ failed to explain rejection of agency psychologist's opinion recommending limitation to superficial interaction); *Gidley v. Colvin*, No. 2:12-cv-374, 2013 WL 6909170, at *11-12 (N.D. Ind. Dec. 30, 2013) (same).

[7] *See* AR 398: "I don't like to talk on the phone, even to family. I tend to push people away from me. I stay away from relationships because I'd rather be alone but at the same time I fear being alone . . . . I normally get along with people but there's always a few in a group that I snap on. I have a low stress level and cannot tolerate people that act like they know everything. I used to bowl before I began having migraine headaches. I gave it up because it is too loud in the bowling alley and I can't tolerate the light, noise, and the large groups of people."

14

where ALJ included limitation of occasional contact with public, coworkers, and supervisors, and claimant failed to show anything in the medical record demonstrating a need for greater limitation). That said, as explained above, the ALJ may and should consider during any remand whether Plaintiff's stress and anxiety-related limitations manifest or aggravate any mental limitations that affect Plaintiff's ability to work (such as understanding and remembering information and concentration, persistence, or pace), and explain why the RFC determined by the ALJ sufficiently addresses them. And to the extent the ALJ includes any additional social or mental limitations in Plaintiff's RFC, it would be necessary to apprise the VE of those limitations and assure that any jobs proposed for her would still be feasible. *See supra* note 5.

### III.     Plaintiff's Daily Activities

Finally, Plaintiff challenges the ALJ's consideration of her daily activities. Citing Seventh Circuit case law, she argues that "a person's ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily translate into an ability to work full-time." (Pl.'s Br. 22-23, ECF No. 20). But the Seventh Circuit has been equally clear in holding that an ALJ is right to consider a claimant's daily activities when assessing her claimed limitations and symptoms, provided the ALJ does not "equate" the activities with an ability to work full-time. *Jeske v. Saul*, 955 F.3d 583, 592-93 (7th Cir. 2020) ("the ALJ did not reason that Jeske's activities of daily living are as demanding as those of full-time work," but rather, "considered Jeske's activities to determine whether her symptoms were as severe and limiting as she alleged"); *Burmester v. Berryhill*, 920 F.3d 507, 510-11 (7th Cir. 2019) ("The ALJ did not equate Burmester's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules"). "In fact,

15

agency regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities." *Jeske*, 955 F.3d at 592 (citing 20 C.F.R. § 404.1529(a), (c)(3)).

Here, Plaintiff acknowledges that she performs an array of daily activities, including basic hygiene, dressing, eating, laundry, trying to keep her living space clean, and driving to the doctor, among other activities. (Pl.'s Br. 23, ECF No. 20). The record also shows that Plaintiff manages paying bills, dusting, sweeping, mopping, vacuuming, preparing meals, doing dishes, and grocery shopping once a week. (AR 74, 80, 85, 109, 120, 258-59, 376, 398). The ALJ rightly considered all of these activities. (AR 32, 34, 36.). And as the Commissioner correctly notes, Plaintiff points to no language in the decision indicating that the ALJ improperly equated them with an ability to work. (D's Mem. 8, ECF No. 23). To the contrary, the ALJ made clear that Plaintiff's admitted activity level was considered insofar as it "detracts from the severity of her allegations of disability," and whether her "actual activities reveal a significantly greater physical and mental functional ability than alleged," and that "that an individual's daily activities are only one factor taken into consideration for a finding on consistency." (AR 37). The decision also contradicts Plaintiff's claim that the ALJ failed to consider her limitations in performing these activities. Contrary to Plaintiff's claim that the ALJ disregarded the "multiple rest breaks" she needs throughout the day due to pain standing and sitting (Pl.'s Br. 23, ECF No. 20 (citing AR 74)), the ALJ properly acknowledged her claims of pain standing and standing (a reason she was limited to light work), and that certain daily activities are "difficult" for her. (AR 30-34). This analysis fairly assessed Plaintiff's daily activities and her limitations performing them.

Accordingly, the Court finds no error in the ALJ's consideration of Plaintiff's daily activities, but otherwise recommends remand for further consideration of (1) the opinions in Dr.

Link's April 2016 psychological consultative examination report, and (2) Plaintiff's mental RFC and any related hypotheticals to the Vocational Expert. By recommending such remand, however, the Court implies no suggestion that a disability finding or even a different RFC would be required on remand. The Court concludes only that the ALJ's decision erred in assessing Dr. Link's opinions and Plaintiff's mental RFC for all of the reasons discussed above, and in turn failed to build an accurate and logical bridge between the evidence and the ALJ's determinations on those issues. It would remain for the ALJ to determine on remand, after fully considering the evidence discussed herein, whether a different RFC is required and whether Plaintiff is disabled.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court reverse the decision of the Commissioner of the Social Security Administration and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 22nd day of July, 2020.

                                    s/ Joshua P. Kolar
                                    MAGISTRATE JUDGE JOSHUA P. KOLAR
                                    UNITED STATES DISTRICT COURT